IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

LAURA D. FORESTER,                          3:13-cv-00984-RE

                Plaintiff,                   OPINION AND ORDER

v.

CAROLYN W. COLVIN, Acting
Commissioner, Social Security
Administration[1],

                Defendant.

_____

        [1]  Carolyn W. Colvin became the Acting Commissioner of
Social Security on February 14, 2013.  Pursuant to Rule 25(d) of
the Federal Rules of Civil Procedure, Carolyn W. Colvin should be
substituted for Michael J. Astrue as Defendant in this case.  No
further action need be taken to continue this case by reason of
the last sentence of section 205(g) of the Social Security Act,
42 U.S.C. § 405.

1 - OPINION AND ORDER

**SHARON MAYNARD**
Bennett, Hartman, Morris & Kaplan, LLP
210 SW Morrison St., Suite 500
Portland, OR 97204-3149
(503) 227-4600

          Attorney for Plaintiff

**S. AMANDA MARSHALL**
United States Attorney
**RONALD K. SILVER**
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97201-2902
(503) 727-1044

**JORDAN D. GODDARD**
Special Assistant United States Attorney
Social Security Administration
701 Fifth Avenue, Suite 2900, M/S 221A
Seattle, WA 98104-7075
(206) 615-2733

          Attorneys for Defendant


**REDDEN, Judge.**

     Plaintiff Laura Deanne Forester seeks judicial review of a
final decision of the Commissioner of the Social Security Admini-
stration (SSA) in which she denied Plaintiff's application for
Disability Insurance Benefits (DIB) under Title II of the Social
Security Act and Plaintiff's application for Supplemental
Security Income (SSI) under Title XVI of the Social Security Act.
This Court has jurisdiction to review the Commissioner's final
decision pursuant to 42 U.S.C. § 405(g).

     Following a review of the record, the Court **REVERSES** the
decision of the Commissioner and **REMANDS** this matter for the

2 - OPINION AND ORDER

calculation and payment of benefits pursuant to Sentence Four, 42 U.S.C. § 405(g).

## ADMINISTRATIVE HISTORY

Plaintiff filed her applications for SSI and DIB on November 20, 2008, and alleged a disability onset date of November 1, 2008.  Tr. 134.[2]  The applications were denied initially and on reconsideration.  An Administrative Law Judge (ALJ) held a hearing on March 1, 2011.  Tr. 38-77.  At the hearing Plaintiff was represented by an attorney.  Plaintiff and a vocational expert (VE) testified.

The ALJ issued a decision on March 10, 2011, in which she found Plaintiff was not disabled because, although she could not perform her past relevant work, she could perform other work existing in significant numbers in the national economy as a motel house keeper or garment sorter.  Tr. 29.  That decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review.

Plaintiff now seeks review in this Court.

## BACKGROUND

Plaintiff was born in 1972, and was 38 years old on the date

---

[2] Citations to the official transcript of record filed by the Commissioner on January 30, 2012, are referred to as "Tr."

3 - OPINION AND ORDER

of the ALJ's decision.  Tr. 134.  She has a Juris doctorate

degree.  Tr. 42.  Plaintiff has past relevant work experience as

a customer service supervisor and an appeals and grievance

specialist.  Tr. 67.

Plaintiff alleges disability due to bipolar disorder,

posttraumatic stress disorder (PTSD), and Attention Deficit

Disorder (ADD).  Tr. 165.


### STANDARDS

The initial burden of proof rests on the claimant to

establish disability.  *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th

Cir. 2012).  To meet this burden, a claimant must demonstrate her

inability "to engage in any substantial gainful activity by

reason of any medically determinable physical or mental

impairment which . . . has lasted or can be expected to last for

a continuous period of not less than 12 months."  42 U.S.C.

§ 423(d)(1)(A).  The ALJ must develop the record when there is

ambiguous evidence or when the record is inadequate to allow for

proper evaluation of the evidence.  *McLeod v. Astrue*, 640 F.3d

881, 885 (9th Cir. 2011)(quoting *Mayes v. Massanari*, 276 F.3d

453, 459-60 (9th Cir. 2001)).

The district court must affirm the Commissioner's decision

if it is based on proper legal standards and the findings are

supported by substantial evidence in the record as a whole.  42

4 - OPINION AND ORDER

U.S.C. § 405(g). *See also Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1161 (9th Cir. 2012). Substantial evidence is "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Molina*, 674 F.3d. at 1110-11 (quoting *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009)). It is more than a mere scintilla [of evidence] but less than a preponderance. *Id.* (citing *Valentine*, 574 F.3d at 690).

The ALJ is responsible for determining credibility, resolving conflicts in the medical evidence, and resolving ambiguities. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). The court must weigh all of the evidence whether it supports or detracts from the Commissioner's decision. *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). Even when the evidence is susceptible to more than one rational interpretation, the court must uphold the Commissioner's findings if they are supported by inferences reasonably drawn from the record. *Ludwig v. Astrue*, 681 F.3d 1047, 1051 (9th Cir. 2012). The court may not substitute its judgment for that of the Commissioner. *Widmark v. Barnhart*, 454 F.3d 1063 (9th Cir. 2006).

## ALJ'S FINDINGS

At Step One the ALJ found Plaintiff has not engaged

5 - OPINION AND ORDER

in substantial gainful activity since her November 1, 2008, onset date.  Tr. 23.

At Step Two the ALJ found Plaintiff had the severe impairments of "bipolar disorder, posttraumatic stress disorder, attention deficit hyperactivity disorder, and obstructive sleep apnea."  *Id.*

At Step Three the ALJ concluded Plaintiff's impairments do not meet or equal the criteria for any Listed Impairment from 20 C.F.R. part 404, subpart P, appendix 1.  The ALJ found Plaintiff had the RFC to perform light work "limited to simple, routine tasks with superficial public and coworker contact.  She should have goal oriented work rather than production assembly pace work."  Tr. 25.

At Step Four the ALJ concluded Plaintiff was not able to perform her past relevant work as a customer service supervisor and appeals/grievance specialist.  Tr. 28.

At Step Five the ALJ found Plaintiff could perform other jobs that exist in significant numbers in the national economy, including motel housekeeper and garment sorter.

## DISCUSSION

Plaintiff contends the ALJ erred by (1) finding Plaintiff less than fully credible; and (2) when she improperly rejected the opinion of treating physician Philip Bolton, M.D.

6 - OPINION AND ORDER

## I.  Credibility

The ALJ is responsible for determining credibility,
resolving conflicts in medical testimony, and for resolving
ambiguities. *Andrews v. Shalala,* 53 F.3d 1035, 1039 (9ᵗʰ Cir.
1995). *See also Vasquez v. Astrue,* 547 F.3d 1101, 1104 (9ᵗʰ Cir.
2008). The ALJ's findings, however, must be supported by
specific, cogent reasons. *Reddick v. Chater,* 157 F.3d 715, 722
(9ᵗʰ Cir. 1998). *See also Holohan v. Massanari,* 246 F.3d 1195,
1202 (9ᵗʰ Cir. 2001). Unless there is affirmative evidence that
shows the claimant is malingering, the Commissioner's reason for
rejecting the claimant's testimony must be "clear and
convincing." *Id.* The ALJ must identify the testimony that is
not credible and the evidence that undermines the claimant's
complaints. *Id.* The evidence upon which the ALJ relies must be
substantial. *Id.* at 724. *See also Holohan,* 246 F.3d at 1208.
General findings (*e.g.,* "record in general" indicates
improvement) are an insufficient basis to support an adverse
credibility determination. *Reddick,* 157 F.3d at 722. *See also
Holohan,* 246 F.3d at 1208. The ALJ must make a credibility
determination with findings sufficiently specific to permit the
court to conclude that the ALJ did not arbitrarily discredit the
claimant's testimony. *Thomas v. Barnhart,* 278 F.3d 947, 958 (9ᵗʰ
Cir. 2002).

In deciding whether to accept a claimant's subjective

7 - OPINION AND ORDER

symptom testimony, "an ALJ must perform two stages of analysis: the *Cotton* analysis and an analysis of the credibility of the claimant's testimony regarding the severity of her symptoms." *Smolen v. Chater,* 80 F.3d 1273, 1281 (9th Cir. 1996).

> Under the *Cotton* test, a claimant who alleges disability based on subjective symptoms "must produce objective medical evidence of an under-lying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Bunnell,* 947 F.2d at 344 (quoting 42 U.S.C. § 423(d)(5)(A) (1988)); *Cotton,* 799 F.2d at 1407-08. The *Cotton* test imposes only two requirements on the claimant:(1) she must produce objective medical evidence of an impairment or impairments; and (2) she must show that the impairment or combination of impairments *could reasonably be expected to* (not that it did in fact) produce some degree of symptom.

*Smolen,* 80 F.3d at 1282. *See also Carmickle v. Comm'r Soc. Sec. Admin.,* 533 F.3d 1155, 1160 (9th Cir. 2008).

Plaintiff testified that she is unable to work because of depression and its symptoms, including a lack of energy, an inability to concentrate, a lack of motivation, and "feeling okay sometimes, and being sort of impaired other times." Tr. 45. She said she had difficulty caring for her children and received support from friends who cleaned and brought them food. *Id.* Plaintiff testified that working as an attorney triggered depression. Tr. 48-49. She stated that when her depression was at its worst she could not get out of bed, shower, brush her teeth, arrange for food, attend to her children, or attend to

8 - OPINION AND ORDER

work.  Tr. 49.  Plaintiff testified she experienced manic
episodes that lasted up to a week and depressive episodes that
lasted for three weeks to three months at a time.  Tr. 50.  She
testified that PTSD made her hypervigilant and interfered with
sleep.  Tr. 53-54.

The ALJ found Plaintiff not credible to the extent that her
allegations exceed the ALJ's evaluation of her RFC. Tr. 25. The
ALJ stated:

> Treatment records reflect gradual improvement
> leading to substantial improvement within 12
> months of her alleged onset date.
>
> . . .
>
> With the exception of the period shortly after
> her alleged onset date, the claimant has been
> able to care for her children, currently aged
> 7 and 9.  She is engaging in part-time work and
> earned $6786 in 2010.  Her testimony that she is
> unable to do this work full time is credible.
> However, her work is skilled with an SVP of 8.
> Her testimony that she would be unable to perform
> her phone sex work on a full-time basis is also
> credible, but this work required extensive social
> interaction.  Evidence does not establish an
> inability to sustain simple types of work with
> superficial public and coworker interaction.
> The claimant has reported she wanted to work
> part time and mostly from home due to caring for
> her two children, not due to her impairments.

Tr. 26-27.

## A.  Improvement in Plaintiff's Condition Within 12 Months of Her Onset Date

The ALJ found Plaintiff's treatment records reflected
debilitating symptoms at the time of her onset date and for a

9 - OPINION AND ORDER

period of time following her onset date.  However, the ALJ found

that by September 2009 Plaintiff had improved enough to work

full-time.  Tr. 26.  The ALJ cited treatment notes from March,

June, July, and September 2009.  Tr. 26.

On February 4, 2009, Karen Dimalanta, Ph.D., of Western

Psychological and Counseling Services, terminated services for

Plaintiff because Plaintiff required a "higher level of care."

Tr. 409.

In March 2009 Philip Bolton, M.D. began treating Plaintiff

at Luke-Dorf, Inc.  Records indicate Plaintiff saw Dr. Bolton or

Luke-Dorf counselors at least weekly through December 2010. Tr.

561, 574-636.  In March 2009 Dr. Bolton noted impaired attention

and concentration, the inability to stay on topic, paranoia, and

mild visual hallucinations.  Tr. 561.  In April Dr. Bolton found

Plaintiff was over sedated and stopped Geodon and started

Abilify.  Tr. 554.  She was unable to concentrate.  Tr. 547.  In

May, Plaintiff's mood was "much better than three months ago."

Tr. 540.   In mid May, Plaintiff's depression returned, she had

difficulty getting out of bed, her thinking was slowed, she could

not motivate, and she was tired.  Tr. 542. By the end of May

Plaintiff was looking for work flexible enough to accommodate her

disability.  Dr. Bolton wrote: "Talked about the types of jobs

she is likely to do well in.  A full-time job with set hours

would be difficult for her especially during the times when she

10 - OPINION AND ORDER

is more impaired by her symptoms." Tr. 540.

On June 2, 2009, Plaintiff reported sleeping better, and she had obtained a job two days a week for four hours a day. Tr. 453. She had spent the prior week depressed in bed, she walked for exercise three days, and did "some gardening." *Id.* She reported "trouble with productivity. She is able to take on very small tasks, but larger tasks are avoided." Tr. 453. She was unable to clean her house or do the paperwork for her divorce and closing her law practice. Dr. Bolton increased the dose of Abilify, and Plaintiff reported better sleeping, mood, and concentration on June 16, 2009. Tr. 457, 458.

On July 7, 2009, Plaintiff reported increased symptoms of sadness and anxiety, and the counselor noted she "may be vulnerable to decompensation." Tr. 460. By the end of July, Dr. Bolton noted more energy and job seeking. Tr. 462.

In August, 2009, Plaintiff reported struggling with low mood and feeling "overwhelmed and paralyzed, finding it difficult to initiate small steps to work towards her goals." Tr. 464. The counselor agreed to accompany Plaintiff to complete the paperwork for the Oregon Health Plan. Plaintiff was anxious and the counselor reminded her of relaxation techniques to retain sufficient focus to complete the paperwork. Tr. 470. Dr. Bolton noted Plaintiff's depression was worse: "Procrastination seems to be very important factor in worsening her depression. She avoids

11 - OPINION AND ORDER

issues that are critical to her well-being and begins to slip into greater and greater depression." Tr. 467. He recommended procrastination therapy.

On September 3, 2009, Plaintiff reported she was able to achieve "one to two small steps towards her goals each day, but still finds her looming foreclosure, her bankruptcy, her lack of income, her lack of employment and her need to close out her law practice to be very stressful." Tr. 475. The counselor noted that Plaintiff "appeared to be in good spirits," and "did not break down when talking about" her stressors. *Id.*

On the same day, Dr. Bolton completed an Annual Review. Tr. 478-81. Plaintiff "continues to struggle with low mood, high anxiety, and lack of motivation, she has made some improvements since beginning services...." Tr. 478. Dr. Bolton changed her level of care from Intensive to Rehabilitation. Plaintiff took Adderall, Prozac, Wellbutrin, Ambien, and Abilify. Dr. Bolton diagnosed Bipolar I Disorder, Most Recent Episode Depressed, Moderate; Posttraumatic Stress Disorder, and Attention-Deficit/Hyperactivity Disorder, Predominantly Inattentive Type. Tr. 481. He assessed a GAF of 55.

On September 16, 2009, Plaintiff was "very tearful and hard to understand." Tr. 538. She was very depressed, crying and sleeping most of the day. Plaintiff had not taken her Wellbutrin for two weeks because "it was too expensive to fill." *Id.* The

12 - OPINION AND ORDER

counselor agreed to research alternative funding for the prescription.   On September 17, Dr. Bolton noted her mood was 3/10, and Plaintiff was spending "almost all of her time in bed." Tr. 537.   Dr. Bolton recorded decreased psychomotor activity, and subdued affect.   *Id*.

On October 1, 2009, Dr. Bolton reported "dramatic improvement" since restarting Wellbutrin.   Plaintiff had found a job with flexible hours working from home doing "explicit adult conversations."   Tr. 534. Dr. Bolton stated "if she gets to a more stable point in her life...." he could begin tapering one of her medications.   However, through October Plaintiff reported low energy and fear, sleeping 17-20 hours per day, but not a significantly depressed mood.   Tr. 530.   She had run out of her medication again and was too embarrassed to call the Doctor. Dr. Bolton noted she was "moderately depressed," with decreased psychomotor activity.   *Id.*

The ALJ's assertion that the medical record supports her determination that Plaintiff's condition improved by September 2009 is not supported by substantial evidence and is not a valid reason to find Plaintiff less than fully credible as to her symptoms and limitations.

/ / /

/ / /

13 - OPINION AND ORDER

**B.   Part Time Work and Caring for her Children**

The ALJ found that Plaintiff's assertion of disabling
symptoms was undermined by her part time work from home and her
care for her two children, aged 7 and 9 at the time of the
hearing.  Tr. 27.  However, Plaintiff had custody of her children
only half time, she consistently reported receiving help from
friends to take care of them, and her children were old enough to
find food or bathe themselves if Plaintiff was incapacitated.
Tr. 42, 45, 196, 57.

As to Plaintiff's part time work, she worked from home with
completely flexible hours.  Tr. 534.  The ALJ does not explain
how this part time work undermines Plaintiff's credibility.

The ALJ discredited Plaintiff because she "...wanted to work
part time and mostly from home due to caring for her two
children, not due to her impairments."  Tr. 27.  However, the ALJ
failed to address conflicting evidence.  Plaintiff did state she
wanted to work from home to care for her children.  Tr. 607.  She
also stated on numerous occasions she wanted to work from home
due to her symptoms: in order to limit her interactions with
people, in order to have a low-stress, flexible hour job, because
she's not capable of working outside the home, to have less
structured work to accommodate her disability.  Tr. 522, 579,
539, 632, 419.

The ALJ noted that, despite ongoing symptoms of depression

and hypomania, Plaintiff's treatment providers found, in the fall of 2009, Plaintiff was "pleasant and cooperative" and demonstrated a euthymic affect, "despite her clear reports of depression." Tr. 525. This is not a reason to find Plaintiff less than fully credible as to her limitations.

Plaintiff sought and was compliant with medical treatment, including numerous medications. Her activities were consistent with her asserted symptoms and limitations.

There is no affirmative evidence of malingering in the record, and Plaintiff's impairments could cause some degree of the symptoms alleged, and there is not any evidence in the record that contradicts Plaintiff's assertion that she is able to engage only in sporadic activity. Thus, the ALJ erred when she found Plaintiff less than fully credible because the ALJ did not provide legally sufficient reasons supported by the record for doing so.

## II. Medical Providers

Disability opinions are reserved for the Commissioner. 20 C.F.R. §§ 404.1527(e)(1); 416.927(e)(1). If there is not a conflict between medical source opinions, the ALJ generally must accord greater weight to the opinion of a treating physician than that of an examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). More weight is given to the opinion of a treating physician because that person has a greater opportunity

to know and to observe the patient as an individual. *Orn v.
Astrue,* 495 F.3d 625, 632 (9th Cir. 2007). In such circumstances
the ALJ should also give greater weight to the opinion of an
examining physician over that of a reviewing physician. *Id.* If
a treating or examining physician's opinion is not contradicted
by another physician, the ALJ may only reject it for clear and
convincing reasons. *Id.* (treating physician); *Widmark v.
Barnhart,* 454 F.3d 1063, 1067 (9th Cir. 2006)(examining
physician). Even if one physician is contradicted by another
physician, the ALJ may not reject an opinion without providing
specific and legitimate reasons supported by substantial evidence
in the record. *Orn,* 495 F.3d at 632; *Widmark,* 454 F.3d at 1066.
The opinion of a nonexamining physician by itself is insufficient
to constitute substantial evidence to reject the opinion of a
treating or examining physician. *Widmark,* 454 F.3d at 1066 n.2.

The ALJ may reject physician opinions that are "brief,
conclusory, and inadequately supported by clinical findings."
*Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005).

Plaintiff's treating psychiatrist advised Plaintiff in May
2009 that she should work only part time.

> Brief counseling took place. Talked about the
> types of jobs she is likely to do well in. A
> full-time job with set hours would be difficult
> for her especially during times when she is more
> impaired by her symptoms.

Tr. 540.

16 - OPINION AND ORDER

Subsequently, Dr. Bolton adjusted Plaintiff's medications numerous times in an attempt to control her symptoms. Tr. 453-476, 501-534, 574-636. In September 2010, Dr. Bolton noted Plaintiff cycled in and out of depressive episodes. Tr. 602.

The ALJ did not address Dr. Bolton's assertion. On this record the ALJ erred when he rejected Dr. Bolton's opinion because the ALJ did not provide legally sufficient reasons supported by the record for doing so.

## REMAND

The decision whether to remand for further proceedings or for immediate payment of benefits generally turns on the likely utility of further proceedings. *Harman v. Apfel*, 211 F.3d 1172, 1179 (9th Cir. 2000). When "the record has been fully developed and further administrative proceedings would serve no useful purpose, the district court should remand for an immediate award of benefits." *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004).

The decision whether to remand this case for further proceedings or for the payment of benefits is a decision within the discretion of the court. *Harman*, 211 F.3d 1178.

The Ninth Circuit has established a three-part test "for determining when evidence should be credited and an immediate award of benefits directed." *Harman*, 211 F.3d at 1178. The

17 - OPINION AND ORDER

Court should grant an immediate award of benefits when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting . . . evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Id.* The second and third prongs of the test often merge into a single question: Whether the ALJ would have to award benefits if the case were remanded for further proceedings. *Id.* at 1178 n.2.

The Court has determined the ALJ erred when she concluded Plaintiff was not fully credible and when she rejected the opinion of Dr. Bolton. If credited, those opinions establish that Plaintiff is disabled. Thus, the Court concludes Plaintiff is disabled based on this medical record and no useful purpose would be served by a remand of this matter for further proceedings. *See Harman,* 211 F.3d at 117.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

18 - OPINION AND ORDER

## CONCLUSION

For these reasons, the Court **REVERSES** the decision of the Commissioner and **REMANDS** this matter to the Commissioner pursuant to Sentence Four, 42 U.S.C. § 405(g) for the immediate calculation and payment of benefits to Plaintiff.

IT IS SO ORDERED.

DATED this 27day of May, 2014.

JAMES A. REDDEN
United States District Judge

19 - OPINION AND ORDER